Good afternoon, Your Honors. I'm Jeffrey Renz from the University of Montana School of Law, and it's my duty under the rules of this Court and also my privilege to introduce Roberta Burkhoff, a third-year student admitted to practice before this Court under the student practice rule, and she will present the argument on behalf of Mr. Carpenter. May it please the Court. My name is Roberta Burkhoff, and I'm here on behalf of Plaintiff and Appellant Willie Lee Carpenter, and I'd like to reserve three minutes of my time for rebuttal. Mr. Carpenter wanted to stand to deliver his closing statement. He had seen opposing counsel move about the courtroom for two whole days. He told the judge he would like to stand for the argument, but he objected by saying to the judge, but then the chains are going to make noise. I'm sorry, I couldn't hear you. But then the chains are going to make noise. He told the district court judge he would like to stand for closing, but he was worried about standing for closing because he was worried about the chains making noise. But he said, he didn't just say, but then the chain's going to make noise. He said, but then the chain's going to make noise. They already know I'm in jail. Enough to object? I believe so. I don't think that that constituted a waiver in that he said, please chain me to the plaintiff's table. I don't know that he really even said I object. I'm trying to get you there. Yes, I'm trying. How does that reach a point where he is really telling the judge, I object, there's something wrong with me being shackled, so that the judge is on notice that, well, I better examine the circumstances under which he is shackled? I think registering the fact that he wanted to stand for closing and then was unable to do so comfortably because he was worried about not necessarily the freedom of mobility, not necessarily that the jury already knew that he was incarcerated, but that the chains would also be distracting, not to him necessarily, but also to the jury or both. But distracting is not the question. If that's all it is, there isn't anything for you to really talk to us about, in my view. Maybe you could respond to that, because it seems to me that if all he's worried about is whether they're going to make a noise, but they already know he's in jail, they already know he is a prisoner, then is there really any error? And if there is, is it harmless? That conveys dangerousness. You can go into all the substance about whether he should have been or whether he shouldn't, but he doesn't object to them knowing he's in jail, and all the chains do is say, yeah, he's in jail. And if he was on a cause of action that was access to the law library or prison conditions, that would be one thing, but even the defendants indicate that an element of his cause of action was dangerousness. But if they know he's in jail, then it doesn't necessarily say he's danger because he has chains on. Everybody who goes to jail, how come the jury can't think everybody who's in jail has chains? I mean, there's nothing to suggest that it's more than just a part of the costume. A jail person comes to the courtroom with chains. And with the underlying element of dangerousness, I think that that's where the key point is. This court in Tyers v. Finner, that was a civil case, and the court remanded because of an absence of indication in the record that there was any sort of findings that chains were necessary. That was a civil case. The court there remanded for an evidentiary hearing on whether or not chains were necessary. Which case is this? This is Tyers v. Finner, Your Honor, through the Ninth Circuit. And I take it, counsel, in this case, the district court did not instruct the jury, you may see Mr. Carpenter with chains, this is normal course, nothing like that at all here? There was no curative instructions and there was no hearing prior to trial for the judge to find that shackles were necessary. Can you help me find in the record, and maybe this does need to be sent back for this reason as I think through this case, describing what the shackles were? Because I was in AUSA for many years and we would have prisoners in the courtroom all the time, sometimes they would have no shackles, sometimes they would have just on the wrist, sometimes they'd have the full, Aryan Nation, everything. Valley chains. Yes. Yes. Is there anything in the record that can help us understand what the level of shackling was? The record is silence as to the level of chains. We've spoken to Mr. Carpenter in preparing for court and I can tell you that he was shamed from the feet to a large red metal cement post underneath the plaintiff's table was what was described to me. But as far as the record, and I understand that's what he's telling you and they would be able to maybe contest that. Sure. But in terms of the record, is there anything about the table he sat at? For example, if I were on the jury, could I see the chains underneath the table or was there a curtain on the table? There was nothing in the record to indicate that the jury could see the shackles. If Mr. Carpenter had had counsel present, I'm sure that that would have been an objection that would have been noted for the record as well as other objections. And in terms of what the jury could have perceived, is there anything in the record to show that the jury saw his shackles? The record is also silent on that. So we don't know whether the jury would have thought he was violent because we don't know whether they even saw it. There's inferences from the record that can be drawn based on sidebar conferences as well as his inability to stand that shows that he was contained to that plaintiff's table. Sidebar conversations happened, the judge came down off of the bench and sidebar conversations actually occurred at the plaintiff's table. Why would he have been worried about the jury being able to hear the shackles or the chains if the jury was in a position to have seen him? It wouldn't have made any difference about him complaining about hearing them, would it? They would have known that he had them on whether they heard them or not. And again, that goes directly to the element of dangerousness. Here you have this individual after 10 years still chained to a plaintiff's table. Well, counsel, the jury knows he's in jail. I mean, I've been in district courtrooms and trial courts for a long time. And every day they bring over the prisoners in a van and they're all chained. And everyone sees them chained. And so it's normal for people that are in jail to be in chains if they're going to be transported from the jail somewhere. So the jury would have necessarily known at least that at some time in the process, you know, he would have been in chains and that's just the way things are. Or the jury would have known that he was in prison but not chained. And the 2nd, 3rd, 7th and 8th Circuit Courts have all held in 1983 actions that prisoner pro se plaintiffs should have a hearing prior to. But how did the judge know? The judge was already in the process of what, was it the end of the first trial? So the first trial was nearly completely over when the defendant first brought to the court's attention anything that might put the judge on notice that it was at least inconvenient to the defendant, right?  So if the jury in the first trial would have seen him, that would have been after most of the trial was over and before he made any complaint at all. So I guess we're really talking about the 2nd trial, right? And he was chained for the 2nd trial without an additional hearing or any acknowledgement to his team. Okay. Now for the 2nd trial, did he renew his objection? No, he did not, Your Honor. So you have one where he made it too late, where it wouldn't have made any difference. And then you have a 2nd proceeding in which he never even brings it to the attention of the court that I would prefer the jury not, because they're going to not just know I'm in jail, they're going to infer from that that I'm a bad person. So the judge should have on his own, sua sponte, done it. Is that what we're saying? Yes, Your Honor. And the court is allowed to sua sponte look at a record or the error if it's not preserved on the record, which brings us to a standard of review of plain care. In any of the other circuits, was it sua sponte? So in the 2nd circuit, that would be the Davidson v. Riley. That went, they couldn't conclude that it was harmless. That was... But didn't they have counsel there? They had counsel in Davidson v. Riley. There was counsel in Sides v. Cherry. There was counsel in Mouse v. Baker. I understand that there was counsel in all of them. And in no case did we argue that it was a sua sponte requirement for the district court to do something. And when the circuit's remanded, there's now a requirement for an evidentiary hearing to be held for a prisoner pro se plaintiff. Even when nobody makes an objection? In those circuits, it's required now that some finding, maybe not in a hearing, but that there be some evidence as to the requirement for shackling. And let's move to one of your other issues. Maybe we talk about the leading questions. Was that raised before the district court? On the times that Mr. I mean, Mr., your client did raise objections, did he not, as to some of these, and the court sustained the objections? As to some of them, Your Honor, yes, he did object. And so at this point, we're talking about those to which he did not object, and yet the court has some duty? The judge in this case started off the entire trial by indicating that he would sua sponte object to any blatant rules, violation evidentiary, excuse me, any rules that were in disregard of the rules of evidence. Mr. Carpenter relied on that. He didn't rely on it in some instances because he objected. That is correct. He did object in some cases, but in other cases he didn't, or he objected too late before the entire comment was. So you're suggesting that if a district court ever says, if there's something that's blatant, I'll help you, then the district court, we should adopt a rule that says the district court then has to object every time? I don't think so on every leading question, Your Honor. Or do we look at this and say, is this blatant? I think it was blatant, and it wasn't. I appreciate your argument, but are you really arguing that a court only had to move when it was blatant, only had to object, only had to? I think Mr. Carpenter's reliance was that the judge said that he would do it if it was blatant. And it wasn't just with one witness. It wasn't just with two witnesses. It was with all six witnesses and the majority of the questions, which is contrary to what we'd like to see with having witnesses give their own testimony and testify from memory and the veracity of the witnesses. And when you have a prosecutor asking the majority of the questions in a leading fashion, it reduces the opportunity for there to be that veracity. And the judge could have reined in the government. Moving to your last issue. Has the Supreme Court ever undone this appointment of counsel that you're objecting to? I mean, it seems to me that we've got Wilborn that's right on point, says it's an abuse of discretion and only in exceptional circumstances, and says how they're to make the finding. And in this particular situation, I look for any Supreme Court authority which would suggest our Wilborn was out to lunch and I couldn't find any. You can answer. Thank you. No, the Supreme Court hasn't. But there is a distinction between appoint and request, Your Honor. And we're talking about the request for counsel, not the appointment of counsel. Well, even if they request, don't they have to be appointed? I think that there's a deference if you were to pick up the phone and call me and ask me to stand in on a case. No, no, I'm not talking about the phone. I'm talking in front of the court. The only time you get counsel is if you request. And it's all about Wilborn. We have to determine is this exceptional circumstances. And I think Mr. Carpenter fit that exceptional circumstances. He had a language category of a third grade level. He had an overall education competency of the sixth grade. The CDC had recommended that he not attend hearings without assistance. He needed short and simple instructions. He needed to be told repeatedly what to do. And all of that was in Mr. Carpenter's motions for his request for counsel. Okay. Thank you, Your Honors. May it please the Court, I'm Kathleen Borgers with the California Attorney General's Office, and I represent appellees in this matter. Willie Carpenter presented two simple claims in two separate jury trials. Did the defending correctional officers use excessive force during a search of Carpenter's cell in June 2004, and did Sergeant Phil use excessive force in January 2005 when breaking up a prison fight involving Carpenter? The juries heard Carpenter and his witnesses' testimony, and they heard the officers' testimony. Both juries deliberated for about one hour each, and both found in favor of the officers. Mr. Carpenter had his day in court, and he lost. On appeal, he raises three main issues. First, that the district court plainly erred by not holding a hearing prior to trial where Mr. Carpenter had minor security restraints and never objected. Two, that the district court plainly erred by not interrupting defense counsel's direct examination where counsel employed some leading questions as necessary to develop a witness' testimony and plaintiff did not object. And three, that the district court abused its discretion by declining to appoint counsel where plaintiff did not show exceptional circumstances. Turning to the first issue, the use of security restraints without a pretrial hearing where Carpenter did not object or raise the issue to the district court. Maybe we ought to stop here, counsel. You're suggesting with a person who's there pro se and then saying, but then the chain's going to make the noise, is not enough to suggest in a pro se situation that it's an objection? Yes, Your Honor. I don't think that that is a statement that would indicate to the court that there was a problem. He continued on to say, they already know I'm in jail. That is a true statement. Again, that came at the end of trial. That came right before his closing statement. That came outside the presence of the jury. In this case, on this record, there is no evidence that the jury had any awareness that he was minorly restrained under the table. There was no evidence at all that the jury even had knowledge of that. In the cases, even talking about criminal defendants, the cases relied upon by plaintiff indicate that where there's no evidence that the jury saw the restraints, that there was harm, that it's a harmless error. Is there anything in the record to suggest that this, I won't say defendant, but this plaintiff had any idea that he actually could appear in court without shackles? It's not clear from the record whether he did or he didn't, but I would say that the record is clear that he was fully capable of bringing that case. He filed many objections, excuse me, motions. He filed motions in limine. He filed a motion in limine to keep out his prison disciplinary history, a successful motion. He filed motions in limine to keep out his conviction testimony. He made objections at court to various statements that the defense counsel questions were being asked. So this was not a plaintiff who sort of just sat there like a lump and didn't know what was going on. The record is clear that he was able to articulate his objections. When defense counsel wanted to attempt to show bias of one of his witnesses and show that they were in the same gang, he objected. There was a sidebar. He successfully convinced the court that the gang information should not come in. Again, this is not someone who was just sitting there not aware of what was going  on, and again, going to, again, to the harmless error. Even the cases, the out-of-circuit cases that plaintiff relies on, like Mouse and Lemons, these were, for example, Mouse v. Baker, that was a pretrial detainee, so there was no need for the jury to even know that the person was in prison, as opposed to this case where it was clear that the incident took place in prison. It was clear he was an inmate. In that case, it was raised before by counsel to the judge beforehand, rather than no objection. And in addition, what the panel specifically found was that the very measures that the court here took, leg chain only, moving the plaintiff to the witness box outside of the juror's presence, those were exactly the things that the panel found the trial court did not do in the Mouse case and in the Lemons case, where the trial court did do that here. Thank you. Is there any precedent for the idea, and I know Tyers is our precedent as it relates to this issue, but is there any precedent for the idea that if a judge understands that the defendant or plaintiff is going to be in this particular matter and is going to be in chains, that the judge sua sponte has to do something about it? I don't believe so, Your Honor. And I would also say that, again, maybe there is some case where that might be the situation if it was clear that the jury had seen the change and that it was going to be prejudicial. For example, in the Lemons case, he had handcuffs and leg irons, and he was required to walk in front of the jury as an exploration of how injured he was. So a case like that, maybe there might be a situation where the judge might be required to take some kind of action. Are you suggesting there's a case which would suggest that sua sponte, the district court, would need to act, or would it still require an objection by the plaintiff defendant? I believe it would still require an objection by the plaintiff. But just for, you know, a hypothetical, I think that the plaintiff puts that forward. But that is not this case here. Can you tell us what in the record, the same question I asked your opposing counsel, is there anything in the record that can really describe for us what the courtroom looked that day, in terms of what he was, was he in prison garb, was he wearing, could you see the shackles, was it a belly chain? Anything in the record to help us better understand? There is not anything specifically in the record about that. There is, it is very clear from the record that where he was, for example, he wanted to testify in the witness stand. The judge gave him that option. So it's clear that when he was moved to the witness stand and sat there, that the jury was not present. So they didn't see him moving around. It was clear that his witnesses, who were also inmates, were not handcuffed. The court did remark on that a couple times. So if his witnesses were not handcuffed, logically it makes sense that he would not also be handcuffed. But I appreciate the inference, but we really don't know that, in terms of what so, I mean, I understand that his witnesses were not handcuffed, but I don't know if his witnesses were alleged to have beaten up prison guards, whereas he was. Well, he was, but he admitted, and that is another factor going to harmless error in this case, that I think contrary to what plaintiff said, the central issue in this case, first of all, is not whether the plaintiff was inherently dangerous. And secondly, this is a case where plaintiff admitted he did not, during first in the cell search, he didn't comply with the order to lie down and stay still. He admitted that he was moving, that he was reaching under the bunk for something. Now, he says it was a laundry bag to cover his face. But he admitted that he was not complying with the orders. And the question the jury was supposed to answer was whether, when the officers deployed the pepper spray, were they doing it wantonly, maliciously, for the very purpose of causing harm. So even if, though there's no evidence in the record that the jury saw the shackles, I just don't see how the inference can be made that would warrant the case being sent back. To say. I'm sorry. You weren't finished. Well, and if I could just say also for the second trial, for the fight, again, Mr. Carpenter admitted that he was involved in the fight. He had, while he said punches were thrown, his own witness testified that Carpenter was on top of the other inmate punching him. Mr. Carpenter admitted that he did not immediately drop to the ground, that he did not disengage from the fight. He admitted that he was involved in pushing. So, again, this isn't the kind of case where the only question is, is the plaintiff inherently dangerous? That is not what the question is. The question in that case as well, what did Sergeant File wantonly and maliciously hit him in the head with the baton? Sergeant File testified credibly that it was an accident. The degree of his violence and dangerous has some bearing on the extent of the remedy or the actions that the police have to, that law enforcement officers have to take. I don't know how you can divorce one from the other if he's not violent or whatever, if he's not prone to doing these type of things. Well, then they have to use less force, don't they? I mean, I don't see how you can really simply. You know, I don't agree, Your Honor, because this isn't, for example, a case where the officers necessarily even knew anything about Mr. Carpenter. And in some of the testimony, they said they didn't know him. They didn't have interaction with him. So it isn't necessarily a question of, you know, is he inherently prone to violence. It was in that moment, you know, what did the officers perceive, you know, and what was the reason for their actions. And that is really not relevant as to whether or not. Let me ask you, is there anything to show, or maybe as an officer of the court, you've practiced there or know there. I don't know. But who makes the determination? Is there, does the judge go along with whatever the sheriff or the marshal decides as to who shackled? Are they always shackled? Is that a marshal's decision? Is that a determination that this judge makes on his own in different cases? In other words, are they always shackled, and who makes the decision? My understanding is that generally the inmates are shackled. There might be a situation where it's raised before the court, and then there's some argument. But it's usually very discreet. The court takes extreme measures to make sure the jury does not see there's a curtain around the table. It's under the table. Again, the, you know, plaintiff is not being moved around. But we don't have that. We don't have that. As an officer of the court, you believe that that's a circumstance? Yes. I believe that. But the record doesn't show that. That's the general practice in California. On the other hand, we can't presume that the jury did see that. Right. We can't presume it, but I think from the totality of the record, there's just absolutely nothing to indicate that the jury did see it. And again, it's plaintiff's burden. It's a harmless error standard. And the questions here were simple. The officers were credible. And the jury, you know, deliberated about an hour for each. This was clearly not a case where those issues were going to affect the outcome of the trial. Well, Cass, let me ask you this. This is a hypothetical, but I want to understand, if we have to write something in this case, where we're going to come down. Let's assume same case, exactly the same, except on the verdict form. The verdict form comes back from the jury, and they find for the defense. And they say, and they actually write on the jury form, because we saw him wearing shackles, so we know he's dangerous, period. That's on the jury form. In your view, does the case come out the same way? I definitely think that the trial court in that case would be well advised to consider having some kind of hearing, talking with counsel, seeing if there is some kind of curative instruction that could be given. I mean, once the verdicts come down. Verdicts come down, and the verdict says on the form, we find for the defense, because he was wearing shackles, so we know he's dangerous. To be honest, I mean, what I would assume would happen in that case would be the plaintiff would then make a motion for, you know, to disregard the verdict. Well, and that's kind of what we have today. That's what they're trying to, I think that's what they're asking us to do now, is to disregard the verdict. Yes, except for with no evidence that it was harmless. But again, I think in that situation, and then going forward to the second part of your question, I believe, is that how would that then affect, say, the second trial. And then in that case, you know, is the judge unnoticed that that should be an issue? See, I would have thought you would have said that it wouldn't have mattered because he waived it because he didn't raise it. But the reason why I use that hypothetical is because we know in that hypothetical that the shackles had an influence on the jury's verdict. The jury actually wrote it on the verdict form. It's one of those, I've never heard of this happening, but just for argument's sake. Here we don't know that, but we don't know what we don't know. But we do know there was no objection. So is it your position in the hypothetical I just gave that the plaintiff would still lose because the plaintiff did not adequately raise the issue? I do believe the plaintiff would still lose. But I do appreciate that it can be a different situation where you have a pro se litigant, and if you have evidence where the jury specifically is considering something that was inappropriate, then I believe there would at least be an issue there. But I do think that the court looking at it, you would still consider it waived on for failure to object. Let me change the subject on you, as I did with the other attorney. It's of some worry to me that a judge says, don't worry, I'll object if there's any blatant abuse in this thing, even though you're pro se. And so don't worry too much about it. And then, frankly, the plaintiff puts on their proof without ever having to have anybody testify, except the good, or excuse me, the not plaintiff, but the department, the defendants put on all their proof without ever having anybody testify, except the lawyer. I certainly do think if there was a case where the attorney was just giving a monologue of the facts of what happened and the officers were just sitting there saying, sure, sure, that sounds right, that sounds right. But reading some of this, that's exactly what happened. Respectfully, Your Honor, I fully disagree. I think the record shows that the initial facts were developed through direct examination in a narrative form. It was what happened on this day, what happened next, what happened next. Once those facts came out, then for the direct testimony, there was some summing up. For example, one of the examples that plaintiff objects to now, although did not object at trial, was, in fact, you gave more than one order, correct? Okay. Arguably a leading question. That question came at the end of the testimony, after the officer had already testified in narrative form, that he had given multiple orders. So, again, the answer to the question for leading questions is, was it necessary to develop the witness's testimony and, excuse me, did it result in an answer not based on the witness's independent recollection and, indeed, may result in conscious and unconscious misstatements or embellishment of the facts. That's in plaintiff's reply brief, they rely on that. Again, this isn't a question where, you know, how many orders did the defendant give? Oh, he didn't remember. Or, oh, he testified he only gave one order. And then, because of a question like, in fact, you gave more than one order, isn't that correct? Somehow change the testimony, embellished it. The record is clear that he, for that situation, he gave more than one order, and I think that that goes through the other leading questions as well. If you have no more questions, I'll submit. Thank you. Thank you. So, Counselor, you took more than your time, but your good professor got up and stole some of your time just trying to introduce you and say how good you were. So I'll give you 30 seconds. Thank you, Your Honor. In this case, the judge deferred to the California Department of Corrections. At the end of the second trial, it was clear that he asked the officers to sit when the defendant rose to give his leading testimony. The judge also, at the end of the second trial, deferred to the treatment of the prisoners as they were being released in indicating that that was a California Department of Corrections instance. And I would ask that Your Honor's remand this case, and thank you very much for your time. Thank you for your argument. And, again, thank you, University of Montana, for participating in this pro bono project. We very much appreciate your efforts in that regard. And we have a rule that isn't in many circuits, and that is that if you will take these pro bono cases, we guarantee you an argument. And as a result, we're so delighted when the universities and the law schools take these projects on, and we very much appreciate that. I appreciate both of you for your good argument today. Thank you very much. The court is now in recess.
judges: Benavides, N.R. Smith, Owens